UNITED STATES of America,
Plaintiff-Appellee,

v.

John Richard LUTTRELL,
Defendant-Appellant.

No. 79–2922.

United States Court of Appeals,
Fifth Circuit.

Jan. 18, 1980.

J. Richard Young, Asst. Public Defender, Atlanta, Ga., for defendant-appellant.

Howard J. Weintraub, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before GEE, TJOFLAT, and ANDER-SON, Circuit Judges.

PER CURIAM:

Defendant John Richard Luttrell appeals from the district court's denial of his motion to dismiss the indictment against him. He asserts that a retrial would offend principles of double jeopardy. Because we find that his contention is without merit, we affirm.

The pertinent facts follow. On November 9, 1978, defendant Luttrell was transferred from the federal penitentiary in Leavenworth, Kansas, to the federal penitentiary in Atlanta, Georgia, where he was placed in administrative detention pending final classification into the general prison population. On November 13, defendant was informed at a prison hearing that he would be transferred from administrative

detention to the admission and orientation unit later that day. After the hearing he was returned to his cell. At 12:30 p. m., Luttrell was taken by Corrections Officer Ronald Streeter to the admissions and orientation unit, where he was searched by Counsellor Kossie Thompson. Thompson found a long homemade knife in the front belt of defendant's trousers. A subsequent search of defendant's cell disclosed a second knife.

On December 11, 1978, defendant met with FBI Agent James Procopio. It was his testimony in response to the prosecutor's questioning that precipitated the mistrial.

Defendant was indicted for illegally conveying a weapon within a federal penitentiary in violation of 18 U.S.C. § 1792.[1] At trial defendant was positively identified as the inmate searched by Counsellor Thompson, and both Officer Streeter and Counsellor Thompson testified that defendant had a knife hidden underneath his trousers. The government also called on Agent Procopio to testify. The following colloquy between the prosecutor and Agent Procopio ensued:

Q: Did there come a time when you met with the defendant, John Luttrell?

A: Very briefly, yes.

Q: And before you had an opportunity to advise him of anything, did he tell you anything about himself?

A: I believe it was on December 11 that I—Mr. Luttrell was brought in to me in the lieutenant's office in segregation. I identified myself by name with my credentials, told him who I was with, and before I could go any further, Mr. Luttrell blurted out, My name is John Richard Luttrell. My number is 32678. I have nothing further to say to you without an attorney present. He abruptly turned and walked out the door. Defendant's counsel immediately moved for a mistrial on the ground that the agent's answer constituted a comment upon the defendant's exercise of his fifth amendment right to remain silent and his sixth amendment right to counsel. Although the trial court concluded that there was no bad purpose on the part of the prosecutor or on the part of the witness, it nevertheless granted defendant's motion for a mistrial.

Luttrell subsequently filed a motion to dismiss the indictment on double jeopardy grounds. The magistrate recommended that the motion be denied, and the district court adopted his report and recommendations. Luttrell appeals pursuant to *Abney v. United States*, 431 U.S. 651, 79 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

When a mistrial is granted on motion by the defendant, the government is barred from reprosecuting him only if the prosecutorial misconduct giving rise to the mistrial is "grossly negligent or intentional." *United States v. Garza*, 603 F.2d 578, 580 (5th Cir. 1979); *United States v. Kessler*, 530 F.2d 1246 (5th Cir. 1976). Mere negligence on the part of the government is not sufficient to preclude a second trial. *Lee v. United States*, 432 U.S. 23, 32–34, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977).

The government contends that it put Agent Procopio on the stand to demonstrate that the John Richard Luttrell on trial was the same "John Richard Luttrell" referred to in government exhibits that had been introduced into evidence.[2] The government's position is that the prosecutor sought to elicit from Agent Procopio Luttrell's inmate number, which Luttrell had related to Procopio at their meeting of De-

---

1. 18 U.S.C. § 1792 provides in pertinent part:

   Whoever conveys into such [any federal penal or correctional] institution, or from place to place therein, any firearm, weapon, explosive, or any lethal or poisonous gas, or any other substance or thing designed to kill, injure, or disable any officer, agent, employee, or inmate thereof, or conspires so to do—

   Shall be imprisoned not more than ten years.

2. In its brief the government points to two exhibits: one showing that on November 9, 1978, a John Luttrell was transferred from the United States penitentiary in Leavenworth, Kansas, to the Atlanta penitentiary and was placed in administrative detention, and the other establishing that Luttrell was to be released from administrative detention to admissions and orientation on November 13, 1978.

cember 11. Instead of asking a specific question concerning the inmate number, however, the prosecutor asked an open-ended question—"Did he tell you anything about himself? The response that triggered the motion for a mistrial followed.

In granting the mistrial, the trial court found that there was no "bad purpose" on the part of the prosecutor or on the part of the witness and that the agent's isolated remark was "*inadvertent[ly]* elicited by the prosecutor." (emphasis added). Similarly, in assessing the defendant's motion to dismiss the indictment, the trial court found no evidence of "prosecutorial overreaching," "gross negligence" or "intentional misconduct," concluding only that "the prosecutor was *inartfully* attempting to verify the defendant's prison number, and that the witness simply volunteered the exact words used by the defendant." (emphasis added). These findings cannot be set aside unless clearly erroneous. *Garza*, 603 F.2d at 580 n.5; *United States v. Crouch*, 566 F.2d 1311, 1318 (5th Cir. 1978).

After careful scrutiny, we conclude that they are not clearly erroneous. At oral argument the prosecutor acknowledged that he had not adequately briefed the witness because of time constraints imposed by a crowded prosecutorial calendar. Had he done so, he conceded, Agent Procopio would probably not have implicated Luttrell's fifth and sixth amendment rights in his testimony. While we do not condone inadequate preparation of witnesses for trial, we cannot say that the prosecutor's over-

sight rose to a level of negligence sufficiently gross to bar defendant's retrial.

Our conclusion in this regard is mandated by *United States v. Crouch, supra*, which we find to be controlling here. In *Crouch* the prosecutor was questioning an agent of the Alcohol, Tobacco and Firearms Bureau about the arrest of defendant Crouch. The agent testified that he had explained to Crouch why he was being arrested and had told Crouch of his constitutional rights. The prosecutor then asked the agent whether Crouch had made any statement, and the agent replied that he had not. In refusing to find this manner of questioning a bar to a second prosecution, we stated:

> Appellants' contention is that the mere asking of a question that allowed [Agent] Taylor to so testify is misconduct. This puts things a little high. *We are not prepared to hold that the mere asking of a question, in the absence of a specific agreement not to, would ever insulate a defendant from prosecution.* [citations omitted]. We think it takes more than a single question to vitiate the government's ability to try these defendants on these very serious charges.

566 F.2d at 1320 (emphasis added). In our view, the interchange in the instant case is indistinguishable from that in *Crouch*. Particularly where, as here, "the prosecutor had absolutely nothing to gain, even remotely, by attempting to indirectly advise the jury that the defendant exercised his right to remain silent," [3] we are bound by

---

**3.** Magistrate's Report, Recommendation and Order at 2 n.2.

Defendant contends, however, that the government did have something to gain. Luttrell had apparently made two statements to prison officials—"Aw, shucks, they got me," and "I got it [the knife] out of the air duct." The government had not made these statements available to the defendant until the morning of the trial. The trial court found that this withholding violated Fed.R.Crim.P. 16 but reserved a ruling on whether it would suppress the statements. Because the trial was aborted, the judge never ruled on this issue. At a second trial the government would be allowed to introduce the statements since the defendant now has possession of them. Thus, defendant

submits, the government will benefit from the mistrial. *See United States v. Beasley*, 479 F.2d 1124, 1127 (5th Cir. 1973).

Assuming *arguendo* that defendant's contention is valid, it does not follow that we must dismiss the indictment against him. The trial court found that the prosecutor "had proceeded in good faith" and that there was no "intentional violation of the rules [of discovery]." These findings are not clearly erroneous. Defendant cites us to no evidence that indicates to the contrary, and we have found none. To bar reprosecution under such circumstances would contravene the double jeopardy standards in *Garza, Kessler* and *Lee*, set out above. This we refuse to do.

our decision in *Crouch* to affirm the trial court.

AFFIRMED.