**Guy Henry COLLINS, Appellant,**

v.

**The STATE of Texas, State.**

**Nos. 2–83–284–CR, 2–83–285–CR.**

Court of Appeals of Texas,
Fort Worth.

May 16, 1984.

Danny D. Burns, Jerry J. Loftin, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and C. Chris Marshall, Asst. Dist. Atty., Fort Worth, for the State.

Before JORDAN, BURDOCK and JOE SPURLOCK, II, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

Appellant, Collins, was charged in a two count indictment, cause number 23228, with possession and delivery of a controlled substance, hydromorphone. An enhancement paragraph alleged a previous felony conviction. Collins pled not guilty to the charges and he was tried before the court without a jury. The court found Collins guilty of possession of a controlled substance and also found the enhancement allegation to be true. Collins then admitted his guilt to the charge contained in a second indictment, cause number 24022, which alleged the possession of a controlled substance, hydromorphone; and the court took such admitted offense into consideration in determining sentence. Punishment was assessed at confinement for life in the Texas Department of Corrections.

Collins appealed and the Court of Appeals for the Second Supreme Judicial District of Texas reversed the conviction and remanded the case to the trial court. *Collins v. State*, 642 S.W.2d 80 (Tex.App.— Fort Worth 1982, no pet.). A bench warrant was issued transferring Collins from the Texas Department of Corrections to the County Jail in Tarrant County so that he might be retried.

Collins filed an application for a writ of habeas corpus, claiming double jeopardy, and the trial court denied the relief requested by his application. Collins appeals the denial of relief under his application for a writ of habeas corpus.

We affirm.

Collins alleged four grounds of error. In grounds of error one, two and three, Collins contends that he is being illegally re-

strained because the trial court erred in denying his application for writ of habeas corpus. He argues that he has already been tried and acquitted for the same offense, and a retrial is barred by the double jeopardy provisions of the Texas and United States Constitutions, Article 1.11 of the Texas Code of Criminal Procedure, and the doctrine of collateral estoppel. In his ground of error four, Collins contends that retrial is barred by the misconduct of the prosecution at the prior trial. The trial events leading to his conclusions, and a discussion of the relevant trial evidence, show the following chain of circumstances.

Sometime prior to his arrest, the Fort Worth Police Department was informed that Collins was selling drugs in Fort Worth. A "buy bust" was arranged with the cooperation of a convicted felon, Sharon Diane Malone, in order to catch Collins during the course of an illegal narcotics transaction. In exchange for promises that certain charges would not be filed against her, Malone agreed to participate in the scheme to expose Collins' unlawful activity.

On September 5, 1980, a Fort Worth police officer watched from inside a store as Malone, after having summoned Collins to that location, approached and entered Collins' car. The officer observed Collins reach into his left shirt pocket and pull out a yellow envelope. At that time, the officer exited the store. Collins apparently saw the officer and quickly put the envelope down out of sight, between himself and Malone. Malone got out of the car and after Collins departed from the area, she showed the officer two dilaudid tablets which she had received from Collins. Collins was arrested some distance away, and a total of 87 other dilaudid tablets were seized from his car.

On March 23, 1981, a hearing began on Collins' motion to assert the defense of entrapment. Collins called Malone to the stand to testify on his behalf as his only witness. Malone, testifying inconsistently with her grand jury testimony, stated that she never received any drugs from Collins and claimed that a detective told her to say that she had received drugs from Collins. The trial judge interrupted the testimony and questioned why the case had been brought to trial. He then said he was granting appellant's motion on entrapment and the day's proceedings came to an end.

On the following day, March 24, 1981, the State expressed its intention to proceed to trial. The trial judge restated his finding that there was entrapment in the sale. The State then objected to this ruling since it had never been allowed to present any evidence during the hearing. The court then seemed to indicate that it would reconsider the ruling which it had made the previous day and that appellant's motion on entrapment would be heard simultaneously with the case in chief. Collins was then arraigned, he pled not guilty to the charges in cause number 23228, and his trial to the court began. After the conclusion of the testimony, the court rescinded its earlier ruling and held, after hearing all of the evidence, that there was no entrapment. The court then found Collins guilty beyond a reasonable doubt only of possession of hydromorphone, in cause number 23228, and found the enhancement allegation to be true. Collins then admitted his guilt to the charge contained in the second indictment, cause number 24022, which was taken into consideration in assessing punishment. The court sentenced Collins to confinement for life in the Texas Department of Corrections.

■ We note at the outset that Collins was found guilty only of the charge of possession of a controlled substance, in cause number 23228, and was acquitted of the charge of delivery of a controlled substance in the same indictment. Therefore, we find that any retrial of the delivery charge, in cause number 23228, is absolutely barred. *Young v. State*, 117 Tex.Cr.R. 349, 35 S.W.2d 424 (Tex.Cr.App.1931).

■ We find that retrial of the charges contained in cause number 24022 is not barred by the double jeopardy clause and that Collins may be retried for the charges contained in such indictment. Collins admitted his guilt to the charges contained in

cause number 24022, for the purpose of assessing punishment in the adjudicated offense in cause number 23228 pursuant to TEX.PENAL CODE ANN. § 12.45 (Vernon 1974). The court entered a judgment on Collins' plea in bar and an order barring further prosecution for the charges contained in cause number 24022. By previous opinion of this court we reversed the judgment of the court in cause number 23228, *Collins, supra.* We therefore, find it necessary to set aside the judgment on plea in bar and order barring further prosecution in cause number 24022. We draw support for such action from the Texas Court of Criminal Appeals' decision in *Ex parte Chisena,* 623 S.W.2d 354 (Tex.Cr. App.1981).

In *Ex parte Chisena,* the defendant was found guilty of the charges contained in a cause number 28,273. In assessing punishment, the court took into consideration six separate unadjudicated offenses. The court found that the indictment in cause number 28,273, under which the defendant was convicted, failed to allege an offense. Therefore, the indictment was void. *Ex parte Chisena, supra* at 355. The court then went on to find that "[t]he indictment in cause number 28,273 being void, the court was without authority to assess punishment, and therefore could not 'lawfully take into account' the unadjudicated offenses, and the orders barring prosecution are likewise void." *Ex parte Chisena, supra* at 355. In the present case the reversal of the court's judgment in cause number 23228 is based on trial error. "[R]eversal for trial error does not preclude another trial." *Ex parte Duran,* 581 S.W.2d 683, 684 (Tex.Cr.App.1979). Therefore, we find that such reversal does not preclude another trial on the charges contained in cause number 24022.

In ground of error one Collins contends he is presently being illegally restrained of his liberty by being subjected to the conditions of a bond for trial, the subject of which has already been tried, and concluded in his favor. In ground of error two, Collins contends that he is being wrongfully held to answer to a felony indictment in one or more cases arising out of the same transaction for which he has already been tried. He argues that as the ultimate questions of fact therein were resolved in his favor, further prosecution is barred for offenses arising out of that transaction under the doctrine of collateral estoppel. Collins' ground of error three contends that denial of the relief requested by his application for writ of habeas corpus was error in that a trial on the cases from which these applications are brought is barred under the double jeopardy prohibitions of the Texas and Federal Constitutions and the Texas Code of Criminal Procedure, 1965, as amended.

Collins' argument concerning these first three grounds of error has two parts to it: 1) that jeopardy attached at the hearing on entrapment held on March 23, 1981; and 2) that the disposition of that hearing was an acquittal of Collins. We will address these arguments in the same order.

Collins contends that jeopardy attached at a point during the proceedings held on March 23, 1981. The Supreme Court has stated that "[t]he protections afforded by the" Double Jeopardy Clause "are implicated only when the accused has actually been placed in jeopardy." *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1977). Only if "a defendant is deemed to have been put in jeopardy ... does any subsequent prosecution of the defendant bring the guarantee against double jeopardy even potentially into play." *Crist v. Bretz,* 437 U.S. 28, 32–33, 98 S.Ct. 2156, 2159, 57 L.Ed.2d 24 (1978). The Supreme Court has determined that the time at which jeopardy attaches in a criminal trial should be controlled by federal procedure.[1] *McElwee v. State,* 589 S.W.2d 455, 456 (Tex.Cr.App. 1979); *Schaffer v. State,* 649 S.W.2d 637,

---

1. The Supreme Court held in *Crist v. Bretz,* 437 U.S. 28, 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978) that "[t]he federal rule that jeopardy attaches when the jury is empaneled and sworn is an integral part of the constitutional guarantee against double jeopardy."

638 (Tex.Cr.App.1983). The Supreme Court "has consistently adhered to the view that jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is 'put to trial before the trier of facts, whether the trier be a jury or a judge.'" *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975). Under federal procedure, "jeopardy attaches when a jury is empaneled and sworn, or, in a bench trial, when the judge begins to receive evidence." *United States v. Martin Linen Supply Co., supra*, 430 U.S. at 569, 97 S.Ct. at 7353. Collins contends that at the time the State called its first witness at the hear on March 23, 1981, he had already tendered his waiver of a jury trial and subsequently admitted his guilt as to the charged offenses. At that point, he argues trial had for all purposes commenced to the trial court, without a jury, and jeopardy had attached. Collins argues that during the proceedings of March 23, 1981, he was forced by the trial judge to admit that he was guilty of the offenses of possession and delivery of a controlled substance, hydromorphone, and that the trial court accepted that plea and then proceeded to trial on the defensive issue of entrapment. Collins' argument in this respect is based on three contended events that took place at the proceedings on March 23, 1981. The first is that a waiver of jury trial had been tendered and accepted; the second is that he had pled guilty to the indictment and such plea was accepted by the court. The last event is that the State's first witness was sworn and trial to the court commenced on that date.

Concerning the occurrence of the first of these events, waiver of a jury trial, the State argues that no proper jury waiver occurred at the proceedings on March 23, 1981. In support of this, the State relies on this court's findings in *Collins*.

In *Collins*, Justice Spurlock, Sr., writing for the court, found that the prerequisites "of a valid and effective waiver were not met as of March 23, 1981." *Collins, supra* at 83. Justice Spurlock, Sr., then found that Collins was denied his right to trial by

jury "in the face of [his] timely wish to withdraw any such waiver, prior to the time before a jury panel was seated in the courtroom, ..." *Collins, supra* at 83.

In *Serfass*, the Supreme Court stated: Both the history of the Double Jeopardy Clause and its terms demonstrate that it does not come into play until a proceeding begins before a trier 'having jurisdiction to try the question of the guilt or innocence of the accused.' ... Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy.

*Serfass, supra* 420 U.S. at 391, 392, 95 S.Ct. at 1064. The Supreme Court in *Serfass* was faced with a situation very similar to the present case wherein a district court, pursuant to a pretrial motion and hearing, dismissed the indictment against the petitioner. This holding was appealed by the United States and the petitioner asserted a defense based on the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. In determining that jeopardy had not attached at the pretrial hearing, the Supreme Court found that at that hearing the "[p]etitioner had not waived his right to a jury trial", therefore "[i]n such circumstances, the District Court was without power to make any determination regarding petitioner's guilt or innocence." *Serfass, supra* at 389, 95 S.Ct. at 1063.

 We feel that the same line of reasoning applies to the present case. As of the conclusion of the proceedings on March 23, 1981, a valid and effective waiver of jury trial had not been executed as required by TEX.CODE CRIM.PROC.ANN. art. 1.13 (Vernon 1977). Therefore, at the proceedings held on March 23, 1981, no valid determination of Collins' guilt or innocence was possible under Texas law. *Lawrence v. State*, 626 S.W.2d 56 (Tex.Cr.App. 1982); TEX.CODE CRIM.PROC.ANN. art. 1.15 (Vernon 1977). Because Collins was not exposed to the risk of conviction, jeop-

ardy did not attach on that basis during the proceedings on March 23, 1981.

Collins' contentions that jeopardy attached because of the occurrence of the second and third events, entry of a plea of guilty and swearing in of the first witness, is based on the following exchange between the court and counsel for Collins, Mr. Loftin and Mr. Aultman, concerning Collins' pretrial Motion to Assert Entrapment as a Defense:

THE COURT: Re-urge what?

MR. LOFTIN: Pre-trial motion.

THE COURT: I take it—

MR. AULTMAN: The motion that we started to talk about this morning, Your Honor.

THE COURT: Okay. I take it he's willing to admit that on September the 5th, 1980, that he sold and possessed hydromorphone.

MR. LOFTIN: The answer is yes.

THE COURT: Is that right, Mr. Collins?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. They want a hearing on entrapment. Who will you have first?

MR. LOFTIN: Sharon Malone.

Sharon Malone was then called as a witness, sworn on her oath and testified at the entrapment hearing.

The State argues that Collins did not enter a plea of guilty to the indictment during the proceedings on March 23, 1981. That Collins admitted selling and possessing the drugs only for the purpose of the entrapment hearing in order to show that he was not going to take a position inconsistent with guilt, which would negate a claim of entrapment. The indictment was not read to Collins at the proceedings on March 23, 1981 and there is no indication that Collins was entering a formal plea to

the indictment at that time.[2] We agree with the State's argument.

◼ It is well settled law that "[t]he defense of entrapment is not available to a defendant that *denies* the commission of the offense." *Norman v. State*, 588 S.W.2d 340, 345 (Tex.Cr.App.1979). The reasoning behind such a rule of law is that "a denial of the commission of the offense is inconsistent with entrapment, as this defense assumes that the offense was committed." *Norman, supra* at 345. Therefore, Collins was required to admit the commission of the offense charged before he could assert the defense of entrapment. This admission does not, however, rise to the level of a plea of guilty to the indictment. We find that it is no more than an admission that the event occurred, necessarily made to assert the defense of entrapment.

In the present case, Collins did in fact plead not guilty to the indictment during the proceedings of March 24, 1981, while still relying on the court's finding that "as a matter of fact that there was entrapment in the sale." Therefore, we do not believe that Collins' admission on March 23, 1981, can, under any circumstances, be considered a plea of guilty.

◼ Regarding the third event, the State argues that though Malone was to appear as a witness for the State in the case in chief, she was not called as a witness for the State during the proceedings on March 23, 1981. Malone was called by the defense and sworn as a witness for the purpose of testifying at the entrapment hearing. The State, in fact, called no witnesses at the entrapment hearing. The State points out that when the accused is at risk of conviction, the State must first present its proof. The fact that the defense called its witness first is cogent evidence that the proceeding at issue was not on the merits

**2.** It is still somewhat unclear as to whether the attachment of jeopardy in a bench trial is controlled by federal procedure or this State's long recognized rule that "[j]eopardy does not attach until a defendant pleads to the indictment." *Vardas v. State*, 518 S.W.2d 826, 827 (Tex.Cr. App.1975). *See Thornton v. State*, 601 S.W.2d 340, 344 n. 3 (Tex.Cr.App.1980). For the purpose of our analysis, it does not matter which rule is followed and we make no comment on which rule is the law of this state.

and that the accused was not formally in jeopardy. We agree with the State that the testimony of Malone on March 23, 1981 was offered on the issue of entrapment as a defense and not on the question of Collins' guilt or innocence. At this point in the proceedings, the trial judge was not sitting as the trier of fact on the issue of guilt or innocence, and therefore the testimony of Malone did not signal the attachment of jeopardy.

We find that a valid and effective waiver of jury trial did not take place during the proceedings of March 23, 1981, therefore the trial judge was without the power to sit as the trier of fact as to Collins' guilt or innocence during such proceedings. Under these circumstances, the testimony of Malone was not the type of evidence which, receipt of, signals the attachment of jeopardy. We find that Collins did not enter a plea to the indictment on March 23, 1981. We conclude that jeopardy did not attach at any point during the proceedings of March 23, 1981.

In the second part of Collins' argument in support of his first three grounds of error he contends that the actions and comments of the trial court at the proceedings on March 23, 1981 resulted in his acquittal. This contention hinges on the following exchange between the court and the State's prosecutor, Mr. Worley, concerning the testimony of Malone, at the conclusion of the proceedings on March 23, 1981:

THE COURT: Well, I can't understand why you'd want to prosecute somebody if she's telling this Court now that—

MR. WORLEY: Your Honor, because I don't believe her.

THE COURT: —it didn't happen. Well, it's your duty to see that justice is done and justice in a case where she tells two different stories is to let him go because there would be a reasonable doubt.

MR. WORLEY: No, sir, not—I disagree, Your Honor—

THE COURT: Your motion is granted on entrapment.

Don't bring me any more cases like that.

MR. WORLEY: Your Honor, we still have a case. [End of Proceedings.]

Collins argues that the court in effect ruled that the evidence was insufficient and granted the defense a judgment of acquittal as well as granting the entrapment defense. Collins contends that the actions and comments of the Court made it clear that the State had failed to meet its burden of proof beyond a reasonable doubt and thus constitutes an acquittal and dismissal of the instant offense whose retrial is barred by both the doctrines of collateral estoppel and double jeopardy under both the Texas and United States Constitutions.

■ The State argues that the court's actions of March 23, 1981, were neither an acquittal nor a dismissal. This court has previously ruled on the finality of the actions by the court on March 23, 1981, wherein this court stated, "[e]very court has the right to rescind its rulings, prior to judgment, should the court decide that additional evidence changes the basis of the court's earlier ruling." *Collins, supra* at 84. Although this court did not use explicit double jeopardy language in its opinion, it did reject the argument that a trial court may not rescind its entrapment rulings. Therefore, under the doctrine of the law of the case, the State argues appellant cannot relitigate the issue of the propriety of the trial court's rescission of its prior ruling and thus no double jeopardy problem exists. We agree.

The question of the trial court's power to rescind its ruling on entrapment was properly before this court in *Collins,* as was the question of whether the trial court's actions resulted in a dismissal.[3] Justice Spurlock, Sr., stated that "[t]he initial granting of Collins' motion of March 23, 1981, did not constitute a dismissal of the cause,

---

**3.** We find that "[t]his Court may take judicial notice of its records 'in the same, or related proceedings involving the same, or nearly the same parties.'" *Ex parte Flores,* 537 S.W.2d 458, 460, n. 3 (Tex.Cr.App.1976); *Ex parte Clark,* 545 S.W.2d 175, 176 n. 2 (Tex.Cr.App.1977).

since the motion did not request such relief; and the trial court did not grant such an order on its own motion." *Collins, supra* at 84. This court declined Collins' request to reverse and dismiss the case and instead determined the proper remedy was to reverse and remand for a new trial.

The opinion clearly stated that under the circumstances surrounding the case, "[w]e conclude that it was fundamentally unfair for the trial court to have withdrawn its ruling on entrapment, ..." *Collins, supra* at 85. This conclusion was based on a finding that Collins was denied due process as required by both our state and federal constitutions.[4] However, this conclusion was not based on a finding that the trial court was without power to rescind its initial ruling on the entrapment issue.

We draw support for the finding that the proceedings did not result in an acquittal from *Bush v. State*, 611 S.W.2d 428 (Tex. Cr.App.1981), wherein the Texas Court of Criminal Appeals addressed the issue of the apportionment among the parties of the burden of proof on the defense of entrapment at a pretrial hearing. The Texas Court of Criminal Appeals found it necessary to determine "the appropriate remedy when entrapment is raised at a pre-trial hearing and the State fails to disprove the defense." *Bush, supra* at 431. The Court concluded that "[b]ecause jeopardy does not attach prior to trial, an order acquitting the defendant is not appropriate."

 We find that Collins is forestalled in this appeal from relitigating his contention that the actions of the trial court on March 23, 1981, resulted in a dismissal of the prosecution and restate the finding of this court in *Collins*, that the granting of Collins' motion on entrapment "did not constitute a dismissal of the cause, ..." *Collins, supra* at 84. We also find that the proceedings of March 23, 1981, did not result in an acquittal of Collins. Therefore, retrial is not barred by TEX.CODE CRIM. PROC.ANN. art. 1.11 (Vernon 1977). As

previously stated, we find that jeopardy did not attach at the proceedings of March 23, 1981. These findings dispose of Collins' contentions concerning the Doctrine of Collateral Estoppel in that this doctrine "is but a corollary of the Double Jeopardy Clause, ..." *Ex parte Robinson*, 641 S.W.2d 552, 556 (Tex.Cr.App.1982). Collins' grounds of error one and two are overruled.

These findings alone however, do not allow us to overrule Collins' ground of error three. Implicit within his ground of error three is the contention that the actions of the trial court resulted in such a denial of due process that retrial is barred. As stated above, this court found that the actions of the trial court, in this case, were fundamentally unfair and required reversal and remand for a new trial. This court also found in *Collins*, that the actions of the prosecutor in suppressing material evidence favorable to the accused "constituted a violation of due process." Therefore we believe it is necessary to address Collins' ground of error four contemporaneously with this question of the trial court's actions.

Collins' ground of error four contends that the trial court erred in denying the relief requested by his application for a writ of habeas corpus in that retrial of the indictments herein is barred by the misconduct of the prosecution at the prior trial thereon. The misconduct complained of by Collins was thoroughly covered and discussed by this court in *Collins, supra* at 85–87. However, the question of whether retrial was barred by such misconduct was not argued before this court then.

Collins relies on the case of *United States v. Twigg*, 588 F.2d 373 (3rd Cir. 1978), to support his contention that conduct by the State and its agents can be so outrageous and overreaching as to bar prosecution as a matter of due process of law. We believe that *United States v. Twigg*, is distinguishable from the present case in that the misconduct requiring rever-

---

**4.** We emphasize that Justice Spurlock, Sr.'s, finding of fundamental unfairness applied only to the specific actions of the trial court and circumstances surrounding this case. *Collins, supra* at 84, 85.

sal in that case was engaged in by the officers and agents who arrested the defendants. However, *United States v. Twigg,* does stand for the proposition that governmental overreaching can bar prosecution, or in this case reprosecution, in order to satisfy the requirements of fundamental fairness contained within the Due Process Clause.

Collins also relies on *United States v. Beasley,* 479 F.2d 1124 (5th Cir.1973), *cert. denied,* 414 U.S. 924, 94 S.Ct. 252, 38 L.Ed.2d 158 (1973), to support his claim that deliberate and/or grossly negligent actions by the prosecutor are enough to constitute prosecutorial misconduct as to bar retrial of the defendant. However, we believe the State correctly argues that a better standard for judging prosecutorial misconduct and overreaching was laid down by the Supreme Court in *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982).

Prior to the Supreme Court's holding in *Oregon v. Kennedy,* the general rule was that "where the defendant moves for a mistrial, ... the Double Jeopardy Clause is no bar to retrial." *Oregon v. Kennedy, supra* 102 S.Ct. at 2088. The Supreme Court recognized that previous cases had defined a "narrow exception" to this rule and went on to state that "[t]he circumstances under which respondent's first trial was terminated require us to delineate the bounds of that exception more fully than we have in previous cases." *Oregon v. Kennedy, supra* at 2088. The Supreme Court then determined that "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of Double Jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Oregon v. Kennedy, supra* at 2089. Therefore, the Supreme Court in *Oregon v. Kennedy,* was only

concerned with the situation where prosecutorial misconduct led to the granting of a mistrial on defendant's own motion.

The State argues that the issue of prosecutorial misconduct, as barring retrial, where no mistrial is granted, has previously been addressed by the Texas Court of Criminal Appeals in *Durrough v. State,* 620 S.W.2d 134 (Tex.Cr.App.1981), and urges this court to follow the holding of *Durrough.* The court in *Durrough* was faced with the appellant's contention that his third trial was barred by the doctrine of double jeopardy because of willful prosecutorial misconduct during his second trial. The prosecutor in that case "failed to disclose favorable evidence regarding deals with accomplice witnesses made in exchange for their testimony." *Durrough, supra* at 138. The court then held that:

> The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrials so as to afford the prosecution a more favorable opportunity to convict the defendant. But when the trial proceeds to its conclusion despite a legitimate claim of seriously prejudicial error, the Double Jeopardy Clause will present no obstacle to a retrial if the conviction is reversed on appeal. [Citations omitted.]

*Durrough, supra* at 139. However, we must decline to embrace the holding in *Durrough* as controlling in the present case.[5]

The Supreme Court's newly defined narrow exception to the rule was followed by the United States Court of Appeals for the Fifth Circuit in *United States v. Singleterry,* 683 F.2d 122 (5th Cir.1982), *cert. denied,* 459 U.S. 1021, 103 S.Ct. 387, 74 L.Ed.2d 518 (1982). In this case, the Court had reversed the convictions of two brothers upon a finding of prosecutorial misconduct. On remand, the defendants asserted a claim of double jeopardy. The court

---

5. In declining to follow *Durrough,* we make no comment as to whether that part of the opinion mentioned herein is still good law. We only note that *Durrough* was decided prior to *Oregon v. Kennedy,* and in light of the Fifth Circuit Court of Appeals' decision in *United States v.* *Singleterry,* 683 F.2d 122 (5th Cir.1982), *cert. denied,* 459 U.S. 1021, 103 S.Ct. 387, 74 L.Ed.2d 518 (1982). The holding in *Durrough,* concerning the application of the Double Jeopardy Clause where no mistrial is declared, is questionable.

seemed to characterize the appellants' assertion of double jeopardy as arguing that the test for the narrow exception for governmental provoked mistrials, laid down in *Oregon v. Kennedy*, should be extended to encompass appellate reversals as well.

The government argued that the rule announced in *Oregon v. Kennedy*, "can have no application when the district court denies the motion for a mistrial" and that "[a]n appellate reversal for prosecutorial misconduct, ... can never bar a retrial, even if the prosecutor intended to provoke a mistrial." *United States v. Singleterry, supra* at 123–124. The court first recognized that "[i]t seems anomalous to say that identical prosecutorial misconduct will create a constitutional bar to retrial when the district court correctly grants a mistrial, but not when the district court erroneously denies the mistrial request." *United States v. Singleterry, supra* at 124. The court then went on to state that:

> [U]nder *Kennedy* the double jeopardy clause is concerned only with prosecutorial misconduct that is intended to provoke a mistrial. When a mistrial is not declared, then the prosecutor's efforts have been unsuccessful. The dangers that the *Kennedy* exception was intended to prevent—that the defendant might lose his valued, right to complete his trial before the first jury, and that the prosecutor might be seeking a more favorable opportunity to convict,—are more attenuated when the defendant is convicted by the first jury but an appellate court reverses for prosecutorial misconduct. In such a case, the defendant has not lost his chance for an acquittal by the first jury, and it seems unlikely that any prosecutor would intentionally lay a basis for appellate reversal in order 'to subvert the protections afforded by the Double Jeopardy Clause.' [Citations omitted.]

*United States v. Singleterry, supra* at 124.

In spite of arguing so convincingly that the narrow exception to the rule announced in *Oregon v. Kennedy*, should not be applied where no mistrial is declared, the court in *United States v. Singleterry*, went on to indeed apply the narrow exception by agreeing with the district court's conclusion that "this is *not* one of those rare cases where the prosecutor intended to provoke a mistrial." *United States v. Singleterry, supra* at 125. [Emphasis added.] The court concluded that "this case does not fit within the narrow exception to the rule that prosecutorial misconduct creates no bar to a second trial." *United States v. Singleterry, supra* at 124.

In light of these decisions, we feel that it is necessary to attempt to apply the narrow exception to the rule announced in *Oregon v. Kennedy*, to the facts of the present case. The controlling issue therefore, is whether or not the prosecutor intentionally acted to force a mistrial. "The 'existence or nonexistence of intent' to provoke a mistrial may be inferred 'from objective facts and circumstances.'" *United States v. Singleterry, supra* at 123. Therefore, the focus of this court's inquiry must be on whether the suppression of this material evidence occurred through mere error or negligence on the part of the prosecutor or if such suppression was the result of deliberate and affirmative acts by the prosecutor.

Collins was arrested on September 5, 1980. At the time of his arrest, Valerie (Marazzi) Faulkner was seated in the car with him. Subsequent to that time, sometime during the month of December 1981, Valerie (Marazzi) Faulkner was arrested in connection with a burglary offense. She was indicted under the name of Valerie Faulkner. On January 7, 1981, Valerie Faulkner pled guilty to the offense of burglary of a building and was sentenced to three years in the Texas Department of Corrections and was transferred to the Texas Department of Corrections, Valley Unit, in Gatesville, Texas.

Collins knew the witness in question by her maiden name, Valerie Marazzi. Collins was unaware of her other name, Faulkner, by marriage.

Prior to trial, on January 16, 1981, Collins filed Defendant's Motion for Dis-

covery. The State answered this motion on February 9, 1981. This answer revealed the name and address of the witness in question as "Valerie Marazzi, 4315 Altamesa, Fort Worth, Texas." Also filed on February 9, 1981, was the State's Answer to Defendant's Motion to Produce Exculpatory and Mitigating Evidence. This answer stated that "[n]o such evidence is known to the State at this time."

The trial of Collins was set for March 24, 1981. At some point prior to March 23, 1981, Collins discovered that Valerie (Marazzi) Faulkner was in the Texas Department of Corrections. How and when this fact was discovered is not clear. On March 23, 1981, a Bench Warrant was issued to attempt to immediately transfer Valerie Marazzi to the Tarrant County Jail for purposes of the trial on the next day. Collins claims to have made prior attempts to contact Valerie Marazzi, however, this appears to have been the first attempt to contact her in the Texas Department of Corrections. The warrant was returned unserved.

During the month of March, in the week prior to trial, the State's prosecutor, Mr. Worley, and an investigator from the Tarrant County District Attorney's office visited with Valerie (Marazzi) Faulkner at the Valley Unit of the Texas Department of Corrections. Before this visit was made, the State became aware that the witness in question had a second last name, Faulkner. The State did not reveal either this second last name or the fact that they had visited with her until after the trial on March 24, 1981. However, the existence of the second last name, Faulkner, was discovered by the State after the answers to defendant's discovery motions of February 9, 1981 and prior to the visit with the witness in the month of March. At the time the answers to defendant's discovery motions were made, the only name the State had for the witness was Valerie Marazzi. Following the trial on March 24, 1981, was the first time that the State revealed to Collins that they knew she had a second last name and that they had visited with her prior to trial.

As stated above, when the State answered the defendant's motions for discovery, the only name the State had for the witness was Valerie Marazzi. At this point, the State had informed Collins of all that they knew and had made him privy to all knowledge in their possession. Collins knew prior to trial that Valerie (Marazzi) Faulkner was in the Texas Department of Corrections. It is true that the State did not inform Collins of new facts concerning this witness as they were discovered. However, it is clear that the State did not deliberately and affirmatively attempt to suppress this information. At the hearing on defendant's motion for new trial, Valerie (Marazzi) Faulkner testified that the State's Prosecutor, Mr. Worley, at the time he visited her in March, 1981, had told her that "y'all [counsel for the defense] would probably come down there to talk to me." It is clear from this that the State believed that Collins would be able to locate Valerie (Marazzi) Faulkner. We find that the prosecution in this case did not act deliberately and affirmatively to suppress material evidence, and did not intend to force a mistrial.

Returning to the question of the actions of the trial court, we believe that though they constituted reversible error, they did not so prejudice the defendant's case as to bar further prosecution. The actions, though in error, were not intended to prejudice the defendant's right to a fair trial. Collins' grounds of error three and four are overruled.

The denial of the relief requested by Collins' application for Writ of Habeas Corpus in both causes, no. 23228 and no. 24022, is affirmed.